James Edward LONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–84–00181–CR.

Court of Appeals of Texas,
Dallas.

June 4, 1985.
Rehearing Denied June 28, 1985.

Bruce Anton, Dallas, for appellant.

John Nation, Dallas, for appellee.

Before CARVER, VANCE and MALONEY, JJ.

VANCE, Justice.

Appellant, James Edward Long, was convicted of sexual abuse of a child, sentenced to twenty years' imprisonment, and assessed a $10,000 fine. Appellant contends, *inter alia,* that the admission of videotaped testimony of the complaining witness violated his right of confrontation. We agree. Accordingly, we hold that TEX.CODE CRIM.PROC.ANN. art. 38.071, § 2 (Vernon Supp.1985) is unconstitutional and reverse.

In the jury's presence, the State introduced a video tape recording of an interview of the complainant, a twelve-year-old child, by Jan De Lipsey, a Rape Crisis Center therapist. Prior to the introduction of the evidence, De Lipsey related the circumstances surrounding the recording of the testimony. De Lipsey testified that she met the child approximately fifteen minutes prior to the taping and that, in the presence of two persons from the district attorney's office, she explained to the child the videotape procedure and asked the child general questions concerning the type of abuse allegedly inflicted. During the videotape proceeding, at which only the child and De Lipsey were present the child used anatomically correct dolls and correct language to explain, in detail, incidents of sexual abuse which began when she was five and one-half and continued until she was approximately nine years old.[1]

The trial judge held the tape admissible pursuant to TEX.CODE CRIM.PROC. ANN. art. 38.071, § 2 (Vernon Supp.1985):

Sec. 2. (a) The recording of an oral statement of the child made before the proceeding begins is admissible into evidence if:

(1) no attorney for either party was present when the statement was made;

(2) the recording is both visual and aural and is recorded on film or videotape or by other electronic means;

(3) the recording equipment was capable of making an accurate recording, the operator of the equipment was compe-

---

1. Appellant waived any error in the introduction of extraneous offenses.

tent, and the recording is accurate and has not been altered;

(4) the statement was not made in response to questioning calculated to lead the child to make a particular statement;

(5) every voice on the recording is identified;

(6) the person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;

(7) the defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and

(8) the child is available to testify.

(b) If the electronic recording of the oral statement of a child is admitted into evidence under this section, either party may call the child to testify, and the opposing party may cross-examine the child.

Appellant objected that the introduction of the videotape and article 38.071 deny his right of confrontation· for the following reasons: "the purpose of the [A]ct is to put the witness in a supportive atmosphere outside the jury's presence, where she is more likely to testify more freely"; the "atmosphere was calculated to prompt the girl to give certain responses"; and the child would be less responsive in a courtroom atmosphere.

## The Right of Confrontation

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him...." U.S. CONST. amend. VI. The Fourteenth Amendment Due Process Clause secures the right against invasion by the States. *Pointer v. Texas*, 380 U.S. 400, 403–404, 85 S.Ct. 1065, 1067–1068, 13 L.Ed.2d 923 (1965); *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974); *Porter v. State*, 578 S.W.2d 742, 745 (Tex.Crim.App. 1979) (en banc).

Texas law also scrupulously protects the right of confrontation. *See* TEX. CONST. art. I, § 10 ("In all criminal prosecutions, the accused shall ... be confronted by the witnesses against him...."); TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977) ("In all criminal prosecutions, the accused shall ... be confronted with the witnesses against him...."); TEX.CODE CRIM. PROC.ANN. art. 1.25 (Vernon 1977) ("The defendant, upon a trial, shall be confronted with the witnesses....).

### Function of Confrontation

According to one commentator, the notion of confrontation "requires the state, wherever possible, to present its evidence against the accused in what is traditionally considered the most reliable form, that of direct testimony in open court". Westen, *Confrontation & Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567, 578 (1978) [hereinafter cited as "*A Unified Theory of Evidence*"]. "Historically, the inclusion of the Confrontation Clause in the Bill of Rights reflected the Framers' conviction that the defendant must not be denied the opportunity to challenge his accusers in a direct encounter before the trier of fact." *Ohio v. Roberts*, 448 U.S. 56, 77, 78, 100 S.Ct. 2531, 2545, 65 L.Ed.2d 597 (1980) (Brennan, J., dissenting). As the Court noted in *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973), the right of confrontation is, in essence, a right to a fair opportunity to defend against the State's accusations and fundamental to due process of law:

The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the

stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339–340, 39 L.Ed. 409 (1895).

The Framers intended the clause to serve four distinct functions: (1) to ensure an opportunity for effective cross-examination, the "greatest legal engine ever invented for the discovery of truth." *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970), quoting 5 J. Wigmore, *Evidence* § 1367 (Chadbourne rev. 1970). *See also Davis v. Alaska,* 415 U.S. at 315–16, 94 S.Ct. at 1109–1110; *Chambers,* 410 U.S. at 295, 93 S.Ct. at 1045; *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968); *Bruton v. United States,* 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); (2) to ensure the witness will testify under oath, "thus impressing him [or her] with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury." *Green,* 399 U.S. at 158, 90 S.Ct. at 1935. *See also Raley v. State,* 548 S.W.2d 33, 35 (Tex.Crim.App.1977); (3) to enable face-to-face confrontation. *Green,* 399 U.S. at 157, 90 S.Ct. at 1934 ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); *Ohio v. Roberts,* 448 U.S. at 63, 64, 100 S.Ct. at 2537, 2538; *Dowdell v. United States,* 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911) (Sixth Amendment "intended to secure the right of the accused to meet the witnesses face-to-face, and thus to sift the testimony produced against him"); *Kirby v. United States,* 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890 (1899); *Mattox v. United States,* 156 U.S. 237, 243–44, 15 S.Ct. 337, 339–340, 39 L.Ed. 409 (1895) ("The substance of the constitutional protection is preserved to the prisoner in the advantage he once had of seeing the witness face-to-face."); and (4) to enable the jury to evaluate the demeanor of the witness. *Green,* 399 U.S. at 158, 90 S.Ct. at 1935; *Barber v. Page,* 390 U.S. 719, 721, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *Herbert v. Superior Court,* 117 Cal.App.3d 661, 172 Cal.Rptr. 850, 855 (Ct.App.1972). *See generally* FED.R.EVID. 801 introductory advisory committee note; J. Cook, *Constitutional Rights of the Accused: Trial Rights,* §§ 4–19 (1974, 1984 Supp.); Read, *The New Confrontation—Hearsay Dilemma,* 45 S.Cal.L.Rev. 1 (1972).

### The Confrontation Clause Applied

■ Application of the four factors to the instant case compels the conclusion that the videotape procedure denied appellant the protections the confrontation clause is designed to ensure. Appellant was not afforded an opportunity for face-to-face confrontation, the child was not under oath,[2] and the statute specifically prohibits the presence of appellant or appellant's attorney at the videotaping session. Art. 38.071, § 2(a)(1). The jury was able to evaluate the demeanor of the witness, but the protective, nontrial, nonadversarial setting may have distorted the child's credibility.

### Cross-Examination

Although cases from other jurisdictions addressing taped evidence reach diverse conclusions, most recognize that cross-examination is an inviolable, indispensable element of confrontation. In *United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982), the court held that the use of a videotaped deposition of a prosecution witness did not violate the defendant's right of confrontation since the witness was not available to testify in court and defendant and counsel were present at the taping session. *See also State v. Reid,* 114 Ariz. 16, 559 P.2d 136 (1976), *cert. denied,* 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977).

---

**2.** At the beginning of the tape, De Lipsey tested the child's knowledge of the difference between truth and falsehood and of the definition of a lie. The child stated that "[a] lie is telling a story that is not the truth" and that if she told a lie she "would get in a whole lot of trouble."

In *People v. Heading*, 39 Mich.App. 126, 197 N.W.2d 325 (Ct.App.1972), the court held that a videotape of a lineup was admissible since the identifier was present at trial and thoroughly cross-examined. In *State v. Gettys*, 49 Ohio App.2d 241, 360 N.E.2d 735 (Ct.App.1976), the court held that introduction of a videotaped deposition was unconstitutional absent a showing that the witness was not available to testify at trial. *See also Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (confession of co-defendant who did not take the stand held inadmissible. "[A] major reason underlying the constitutional confrontation rule is to give a defendant charged with crime an opportunity to cross-examine the witnesses against him." *Id.* at 126, 88 S.Ct. at 1622, quoting *Pointer v. Texas*, 380 U.S. 400, 406–407, 85 S.Ct. 1065, 1069–1070, 13 L.Ed.2d 923 (1965)); *United States v. Amaya*, 533 F.2d 188 (5th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977) (use of prior recorded testimony of an available witness denies right of confrontation. "The primary object of the confrontation clause is to permit personal examination and cross-examination of the witness by the defendant." *Id.* at 190.)

### Face-to-Face Confrontation

The vice of trial without face-to-face confrontation is that it denies the accused the "opportunity to hear what is being said against him at trial and thereby undermine[s] his ability to use whatever procedural devices are otherwise at his disposal to challenge the state's case." *A Unified Theory of Evidence, supra* p. 187, at 569–70. Thus, in *Barber v. Page*, 390 U.S. at 725, 88 S.Ct. at 1322, the Supreme Court held that the state must make a "good-faith effort" to produce the witness in person. In *United States v. Benfield*, 593 F.2d 815 (8th Cir.1979), the Eighth Circuit held that face-to-face confrontation was a critical element of the Sixth Amendment right. Defendant was secluded in another room during the videotaping of a deposition of the victim and able to halt the questioning by pushing a buzzer. The victim was not aware of defendant's presence. Defendant's counsel cross-examined the witness and left the room to confer with defendant. The court held that the procedure violated defendant's right of confrontation:

> [T]he confrontation clause contemplates the active participation of the accused at all stages of the trial, including the face-to-face meeting with the witness at trial or, at the minimum, in a deposition allowing the accused to face the witness, assist his counsel, and participate in the questioning through his counsel. A further exception to the face-to-face aspect of the confrontation clause urged by the Government presents a too severe curtailment of this constitutional right. Any exception should be narrow in scope and based on necessity or waiver.

*Id.* at 821.

### Reliability and Demeanor Evidence

.The tape is hearsay and contains no indicia of reliability, a critical element of most exceptions to the hearsay rule. *See Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539 (testimony at a preliminary hearing); *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (co-conspirator's exception to the hearsay rule); *Mancusi v. Stubbs*, 408 U.S. 204, 216, 92 S.Ct. 2308, 2314, 33 L.Ed.2d 293 (1972) (prior recorded testimony of unavailable witness); *Hoover v. Beto*, 467 F.2d 516, 532 (5th Cir.), *cert. denied*, 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673 (1972) (confession of principal admissible in trial of accomplice); *Sellers v. State*, 588 S.W.2d 915, 918 (Tex.Crim.App. 1979) (landlord's statement as to cause of death inadmissible); *Porter v. State*, 578 S.W.2d 742, 745 (Tex.Crim.App.1979) (documents in federal parole officer's file inadmissible); *Coulter v. State*, 494 S.W.2d 876, 881 (Tex.Crim.App.1973) (envelope allegedly containing marijuana inadmissible). Authorities question whether a camera accurately can record a factual representation. The camera "becomes the juror's eyes, selecting and commenting upon what is seen." *Hochheiser v. Superior Court*, 161 Cal.App.3d 777, 208 Cal.Rptr. 273, 278

(1984). "Composition, camera angle, light direction, colour renderings, will all affect the viewer's impressions and attitudes to what he [or she] sees in the picture." Comment, *The Criminal Videotape Trial: Serious Constitutional Questions*, 55 Ore.L. Rev. 567 (1976) quoting G. MILLERSON, THE TECHNIQUE OF LIGHTING FOR TELEVISION AND MOTION PICTURES 47 (1972). Additionally, because the camera lens may not convey subtle nuances, demeanor evidence may be distorted or partially excluded. *Id.* at 576. Finally, "The interposition of a screen between viewer and evidence reduces a juror's attention span and lessons concentration on the facts presented ... which may well result in diminished communication between juror and witness." *Id.* at 577. In sum, the videotape affords few, if any, of the confrontation clause protections and, consequently, does not even substantially comply with the purposes underlying the confrontation requirement. *See Ohio v. Roberts*, 448 U.S. at 69, 100 S.Ct. at 2540.

### State Interest

■■ The dictate of the confrontation clause, however, is not absolute. *See United States v. Thevis*, 665 F.2d 616, 630 (5th Cir.1982); *Sellers*, 588 S.W.2d at 918; *Porter*, 578 S.W.2d at 745. The Due Process Clause protects those liberties that are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). In *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965), the Supreme Court recognized that the right of confrontation is a fundamental right. If a fundamental right is involved, the State may prevail only upon a showing that the statute is necessary to the accomplishment of a compelling State interest. *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973); *McLaughlin v. Florida*, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Bates v. Little Rock*, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960). Further, the legislative enactment must be narrowly drawn to

express only the legitimate State interests at stake. *Griswold v. Connecticut*, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965).

■■ Thus, the right to confront and to cross-examine "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. at 295, 93 S.Ct. at 1045. The right to confrontation "must occasionally give way to considerations of public policy and the necessities of the case." *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). Accordingly, we must evaluate the State's purpose in providing the videotape procedure to determine whether competing interests warranted dispensing with simultaneous confrontation.

The State traditionally has a legitimate and substantial *parens patriae* interest in protecting a child from emotional harm. *See e.g., Interstate Circuit v. Dallas*, 390 U.S. 676, 690, 88 S.Ct. 1298, 1306, 20 L.Ed.2d 225 (1968); *Ginsberg v. New York*, 390 U.S. 629, 639, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1968); *Prince v. Massachusetts*, 321 U.S. 158, 168–69, 64 S.Ct. 438, 443–444, 88 L.Ed. 645 (1944). Legal proceedings may be causally connected to child trauma:

> Psychiatrists have identified components of the legal proceedings that are capable of putting a child victim under prolonged mental stress and endangering his [or her] emotional equilibrium: repeated interrogations and cross-examination, facing the accused again, the official atmosphere in court, the acquittal of the accused for want of corroborating evidence to the child's trustworthy testimony, and the conviction of a molester who is the child's parent or relative.

Libai, *The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System*, 15 Wayne L.Rev. 977, 984 (1969). Thus, children who testify "may be more damaged by their traumatic role in the court proceedings than they were by their abuse." *State v. Sheppard*, 197 N.J.

Super. 411, 484 A.2d 1330, 1342 (Super. Ct.Law Div.1984). Yet "[a]ny zeal for the prosecution of these cases ... cannot be permitted to override the constitutional rights of the defendants involved." *Id.*

Thus, although authorities recognize the potential trauma of in-court testimony, neither our record nor the legislative history contains evidence that the child was, or that sex-abuse victims generally are, emotionally disturbed, reluctant to testify, or intimidated by the accused, or evidence that the videotape procedure was more likely than in-court testimony to elicit a reliable response. *Cf. Sheppard* and *New Jersey Youth and Family Services v. S.S.*, 185 N.J.Super. 3, 447 A.2d 183 (Super.Ct.App. Div.1982), with *Herbert v. Superior Court*, 117 Cal.App.3d 661, 172 Cal.Rptr. 850 (Ct. App.1981). Consequently, we cannot hold that limitation of appellant's right of confrontation was essential to advance the State's compelling interest in protecting the child.

### Subsequent Opportunity to Confront the Witness

■ We respectfully disagree with our sister court's conclusion in *Jolly v. State*, 681 S.W.2d 689 (Tex.App.—Houston [14th Dist.] 1984, pet. filed), that appellant's right to call the child to testify and to cross-examine her, article 38.071, § 2(b), can obviate or rectify constitutional error. We recognize that belated cross-examination, under certain circumstances, can serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement. In *California v. Green*, 399 U.S. at 161, 90 S.Ct. at 1936, the Supreme Court held that cross-examination at the defendant's trial afforded the trier of fact a satisfactory basis for evaluating the truth of the witness' prior statement: "[N]either evidence nor reason convinces us that contemporaneous cross-examination before the ultimate trier of fact is so much more effective than subsequent examination that it must be made the touchstone of the Confrontation Clause." Yet *Green*, in which the prosecution introduced a prior inconsistent statement as

substantive evidence, is distinguishable. The witness in *Green* testified contemporaneously with the introduction of the hearsay statement:

[T]he usual dangers of hearsay are largely nonexistent where the witness testifies at trial. "The whole purpose of the hearsay rule has already been satisfied [because] the witness is present and subject to cross-examination [and] [t]here is ample opportunity to test him as to the basis of his former statements."

*Green*, 399 U.S. at 155, 90 S.Ct. at 1933, quoting 3 J. Wigmore, *Evidence* § 1018 (Chadbourne rev. 1970). *See also Walker v. State*, 473 S.W.2d 497 (Tex.Crim.App. 1971) (grand jury testimony of reluctant state witness testifying at trial admissible); *State v. Hobson*, 234 Kan. 133, 671 P.2d 1365, 1379 (1983) (tape recording of child's interview with police admissible since child testified at trial and was thoroughly cross-examined); *Jones v. State*, 445 N.E.2d 98 (Ind.1983) (deposition taken in defendant's absence admissible since deponent testified at trial).

Further, as one commentator noted, requiring the accused to take the initiative places him "in the difficult position of having to call as a defense witness a person whose testimony is likely to be adverse to his cause". *A Unified Theory, supra*, p. ——, at 579. Although article 38.071 provides appellant the right to call the witness, the statute does not condition admissibility of the videotape on simultaneous in-court availability of the witness. Thus, the statute guarantees neither a simultaneous, *see Sheppard*, 484 A.2d 1330, nor an effective contemporaneous right to cross-examine the child. The danger is clear:

False testimony is apt to harden and become unyielding to the blows of truth in proportion as the witness has opportunity for reconsideration and influence by the suggestions of others, whose interest may be, and often is, to maintain falsehood rather than truth.

*State v. Saporen*, 205 Minn. 358, 362, 285 N.W. 898, 901 (1939).

In the instant case, the State called the child to testify as a rebuttal witness and elicited evidence repetitive of the videotape. Appellant's counsel objected that the State previously had elected to present the testimony by videotape and was merely reiterating facts adduced during the presentation of its case-in-chief to bolster the earlier evidence. The judge overruled the objections. Although appellant's counsel thereafter cross-examined the child, we hold that this subsequent opportunity to challenge the witness' testimony was not sufficient to preserve appellant's constitutional right or to make harmless beyond a reasonable doubt any error in the introduction of the videotape. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 704 (1967). The appearance of the witness was, from appellant's standpoint, fortuitous; appellant could not anticipate that the State would call the witness and, conceivably, was surprised by her appearance. Furthermore, the child took the stand in a different phase of the State's case and a significant amount of time elapsed between the showing of the videotape and the opportunity to cross-examine. The jury's initial impression could not adequately be counteracted by this belated opportunity to cross-examine the witness in person. Consequently, we conclude that the statutory *post hoc* opportunity to cross-examine is insufficient to dissipate any taint in the introduction of the videotape testimony.

Furthermore, the statute unconstitutionally forces the defendant to elect between two constitutional rights. The Fourteenth Amendment Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Additionally, "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States,* 156 U.S. 432, 453,

15 S.Ct. 394, 402, 39 L.Ed. 481 (1895). *See also Homan v. State,* 662 S.W.2d 372, 374 (Tex.Crim.App.1984) (en banc) (in every criminal trial, the prosecution has the burden of proof beyond a reasonable doubt on each element of the offense, and all persons are presumed innocent); *Marlow v. State,* 537 S.W.2d 8, 10 (Tex.Crim.App. 1976) (burden of proof on State, and defendant may present no evidence); *Massey v. State,* 154 Tex.Crim. 263, 226 S.W.2d 856, 860 (1950) (presumption of innocence follows accused throughout trial of every criminal case); *Cloud v. State,* 150 Tex. Crim. 458, 202 S.W.2d 846, 848 (1947) (presumption of innocence means an assumption which prevails as the judgment of the law until the contrary is proven).

The corollary of the conjunction of these two rights is that the accused in a criminal case may be found not guilty though he neither presents evidence in his favor nor cross-examines the State's witnesses. Thus, Article 38.071, by not commanding the presence of the child complainant, a witness indispensable to the State's case, but simply providing appellant a right to call her to testify, compels appellant to forego either his right to confrontation or his right to remain passive. *See Green,* 399 U.S. at 174, 90 S.Ct. at 1943 (Harlan, J., concurring) (the confrontation clause "reaches no farther [sic] than to require the *prosecution* to produce any available witness whose declarations it seeks to use in a criminal trial") (emphasis added). The compulsion of an election between two constitutional rights penalizes the exercise of a constitutional right and is unconstitutional. *McDaniel v. Paty,* 435 U.S. 618, 626, 98 S.Ct. 1322, 1327, 55 L.Ed.2d 593 (1978); *Shapiro v. Thompson,* 394 U.S. 618, 631, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969); *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963); *Speiser v. Randall,* 357 U.S. 513, 518, 78 S.Ct. 1332, 1338, 2 L.Ed.2d 1460 (1958).

Accordingly, for the foregoing reasons, we hold that TEX.CODE CRIM.PROC.

ANN. art. 38.071, § 2 is unconstitutional and reverse appellant's conviction.

CARVER, Justice, dissenting.

I respectfully dissent. Long's particular claim in the trial court, repeated here by brief and argument, urges that the statute in question unconstitutionally denies him confrontation in that it denies *contemporaneous confrontation*. The majority acknowledges that *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) holds that *contemporaneous confrontation* is *not* Long's constitutional right. 399 U.S. at 161, 90 S.Ct. at 1936. I would follow this clear and binding precedent and overrule Long's complaint. If the majority declines to respect and obey the holding of the Supreme Court of the United States, at least it should respect and obey the holding of our sister court to the identical effect in *Jolly v. State*, 681 S.W.2d 689 (Tex.App.—Houston [14th Dist.], July 19, 1984, pet. filed). Upon both precedents, and there appear none to the contrary, I would overrule Long's complaint.