Richard AMESCUA, Appellant,

v.

The STATE of Texas, Appellee.

04–85–00482–CR.

Court of Appeals of Texas, San Antonio.

Dec. 31, 1986.

Rehearing Denied Jan. 22, 1987.

Alvin E. Pape, Jr., Seguin, for appellant.

W.C. Kirkendall, Dist. Atty., Seguin, for appellee.

Before ESQUIVEL, TIJERINA and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment of conviction in an indecency with a child case. TEX.PENAL CODE ANN. § 21.11 (Vernon Supp.1986).

The indictment alleged that appellant engaged in sexual contact with M___ A___, a child younger than 17 years and not his spouse.[1] The jury found appellant guilty of the offense of indecency with a child and assessed his punishment at fifteen (15) years confinement. Appellant's motion for new trial was overruled by operation of law and he has brought this appeal to this Court. He presents us with ten (10) points of error which can be categorized as complaining of the following: the sufficiency of the evidence to sustain the conviction; the constitutionality of TEX.CODE CRIM. PROC.ANN. art. 38.071, § 2 (Vernon Supp. 1986), which permits admission into evi-

---

1. Appellant was charged in the same indictment with the felony offense of sexual assault; in one count it was alleged that he penetrated the child's vagina with a stick and in the other count that he penetrated the child's vagina by means unknown to members of the Grand Jury. Sexual Assault Ch. 977, § 3, 1983 Tex.Gen.Laws, Local & Spec. 5312, amended by Acts of September 1, 1985, ch. 557, § 1, 1985 Tex.Gen, Laws 2159.

dence of the video tape recording of testimony of a child 12 years of age or younger who is the victim of an offense under Chapter 21, Penal Code, as amended; the court's charge to the jury; the State's impeachment of its own witnesses; and the court's refusal to permit discovery of the criminal history of the State's witnesses. We affirm.

We will first address appellant's complaint on the sufficiency of the evidence which is raised in points of error numbers one, two and three. Accordingly, a detailed review of the facts is necessary.

Mary Andrews, a witness for the State, testified that she was the owner and operator of Mary's Little Lamb Day Care Center and that the complainant child, M___ A___, was enrolled at the center. On April 16, 1984, at approximately 10:40 A.M., Andrews found M___ A___, a female 3 years of age, in the hallway of the center "with her pants down." In answer to Andrews' inquiry as to what happened, M___ A___ answered "I bleed in the potty." Andrews examined M___ A___ and her examination revealed blood in the child's vaginal area. Andrews then examined the bathroom area of the center and she saw a commode that had in it "quite a bit of toilet paper" with blood on it. Andrews again inquired of M___ A___ as to what happened and M___ A___ replied "my daddy hurt me down there;" Later M___ A___ replied that she got hurt "at the shop." A further physical examination of M___ A___ by Andrews revealed a vaginal opening "the size of a pencil." After dressing M___ A___, Andrews took her to the serving area of the center, where, upon being questioned once again by Andrews as to how she got hurt, M___ A___ replied: "The ants did it." Andrews then contacted appellant, M___ A___'s father, related to him that M___ A___ was bleeding from the vaginal area and that she wanted appellant to take M___ A___ to the doctor. Appellant arrived at the day care center at approximately 2:30 P.M. that afternoon, picked up M___ A___, and told Andrews that he was taking M___ A___ to the doctor. In a subsequent phone conversation appellant told Andrews that he had taken M___ A___ to the

doctor; that the doctor had examined her; that the doctor told him that something "along that line" (sexual abuse) had happened to M___ A___ within a span of forty-five hours.

Terry Semersky, a witness for the State, testified that she was employed as a teacher at the center on the day in question and that M___ A___, who was in her class, had arrived at the center with her father. Between 10:00 and 10:30 A.M. on the day in question she gave M___ A___ permission to go to the bathroom. She next saw M___ A___ in the bathroom being examined by Andrews and the assistant manager. M___ A___ returned to the classroom where they awaited for M___ A___'s father to pick her up. While they were waiting, Semersky asked M___ A___ who did it, and M___ A___ said "Daddy." Semersky requested that M___ A___ "show" her, and M___ A___ laid down on her back and spread her legs and said "Daddy hurt me here," pointing to her vagina. M___ A___ repeated that "Daddy" had hurt her and again pointed to her vagina area and indicated "here."

Dr. Richard Park, a witness for the State, testified that at approximately 4:00 P.M. on the day in question, appellant brought M___ A___ to his office. Dr. Park conducted a pelvic examination of M___ A___. His examination of M___ A___ revealed "... some serous material, which is defined as a light bloody material, coming out of the vagina. The hymen was broken." Dr. Park concluded that M___ A___'s vagina had been penetrated by some foreign object. He further testified that he did not examine M___ A___ for venereal disease or semen. Dr. Park testified that "a little serous material was coming out of M___ A___'s vagina." Dr. Park considered the situation as "a sex molestation case" or "an accidental penetration." In Dr. Park's opinion the rupture of the hymen took place "within forty-eight hours" prior to the time he examined M___ A___. He also concluded that the bleeding could have occurred some two hours after the penetration.

Janie Jimenez, a witness for the State and a child protective service specialist with the Texas Department of Human Resources, went to the center on April 17, 1984. Shortly after having been introduced to M___ A___ she conducted an interview with M___ A___, which she video taped. Jimenez identified State's Exhibit No. 2 as the video taped interview with M___ A___. The video taped interview took place in a storage room at the center. Jimenez further testified that the machine was operating properly at the time the tape was made; that the machine was capable of making an accurate recording of the scene; that the operator of the machine was a competent operator experienced in operating video tape machines; that no lawyer for either the appellant or the State was present when the video tape was made; that there are three voices on the tape, M___ A___'s, hers and Andrews'; that Andrews was not present in the room while the majority of the video tape was made; and that M___ A___ was available to testify as a witness at the trial.

The record reflects that at this stage of the proceedings, State's Exhibit No. 2 was offered into evidence by the State, and it was admitted into evidence over objection by appellant. An objection was then made by appellant to the presentation of the tape to the jury. His objection was overruled by the court, and the tape was exhibited to the jury. During the exhibition of the tape to the jury, the tape was stopped, and Jimenez testified that the dolls exhibited on the tape were anatomically correct dolls; that M___ A___ designated these dolls as "daddy", "mommy" and M___ A___ and she used the word "cookie" for her vagina and the word "weenie" for the male penis. Jimenez further testified that a video tape of a subsequent interview was made between another specialist and M___ A___.[2]

We have viewed State's Exhibit No. 2. In this tape no incident of sexual abuse was explained by M___ A___. She did explain therein how she ate "weenies" by

putting the penis of the "daddy" doll in her mouth. However in answer to the question by Jimenez as to whose "weenie" she ate, M___ A___ pointed to the "daddy" doll but she did not answer the immediate follow up inquiry by Jimenez as to whether she was by her actions referring to appellant.

Ester Dias, a child protective specialist and regional sexual abuse consultant for the Texas Department of Human Resources, testified as a witness for the State that on December 11, 1984, an interview was video taped between herself and M___ A___ using anatomically correct dolls. She identified State's Exhibit No. 4 as the video tape; that the tape accurately reproduced the interview; that the tape was both visual and audio; that the video machine used operated properly and was capable of making an accurate recording; that she was the operator of the machine; that the only persons present during the interview were herself and M___ A___; that the only voices on the tape are those of herself and M___ A___. She further testified that M___ A___ was available to testify at trial.

Exhibit No. 4 was offered by the State into evidence, and it was admitted over objection of appellant. It was then exhibited to the jury without further objection from appellant.

We have viewed State's Exhibit 4. In this tape M___ A___ did relate incidents of sexual abuse. In answer to a question from Dias if anyone had ever touched her "cookie," M___ A___ stated that "Daddy" "with a stick" over her clothes. In answer to the inquiry by Dias if M___ A___ had ever touched her "daddy's weenie," M___ A___ nodded and stated "with a stick cause his stick in mine." M___ A___ also related to Dias that "daddy" had rubbed his penis on her vagina and something "white" came out of it. When asked about bleeding, M___ A___ related that she had been examined by the "lady" at the center.

Dr. Harold S. Toy, a pediatrician and witness for the State, testified without objection that he examined M___ A___ on No-

2. Both video tapes were viewed in private prior to trial by the trial court and attorneys for both sides. Appellant's attorney made various objections, all of which were overruled by the court.

vember 6, 1984, at the request of the Department of Human Resources. The examination was a complete and comprehensive physical examination which included an examination of the genitalia. His examination revealed "evidence of repeated and chronic trauma to her vagina that caused the labia to be spread apart easily." He could not say when the trauma occurred only that it did not occur within two weeks within the time he examined M___ A___. He further testified that M___ A___ was molested, but he could not determine "when, where or how."

Rodney Hollingsworth, a witness for appellant, testified that appellant was his step-son. He did not know who took M___ A___ to school on the day in question, which was a Monday. He also testified that on the weekend of April 14 and 15, M___ A___ did not complain of being hurt. On the day in question, he drove appellant in his truck to the day care center to pick up M___ A___ and then drove them to the doctor's office. M___ A___ responded differently about 10 times when questioned by appellant and appellant's mother after returning home from the doctor. He further testified that while M___ A___ and he were alone, she told him that she had hurt herself with a hand mirror in the bathroom. The hand mirror was introduced into evidence as Defendant's Exhibit No. 1.

Appellant then called M___ A___ to testify as a witness. She was permitted to testify while sitting on an unidentified person's lap. M___ A___ gave no oral answer to any of the questions asked of her. The record reflects M___ A___ "indicating"; "indicating affirmatively"; "indicating negatively," or "shrugged shoulders." The court announced that such would be done by the court reporter who would "attempt to secure in the record either a negative or positive shake of the head." M___ A___ indicated "negatively" that anyone had touched her vagina or put a stick in it. M___ A___ did, however, indicate "affirmatively" that she bled from her vagina because she fell down at school.

Appellant testified in his own behalf and denied any indecency with M___ A___. He further testified that M___ A___ told him that the boys in school hurt her.

■ Where the sufficiency of the evidence supporting a conviction is challenged, the evidence is viewed in the light most favorable to the verdict. *Denison v. State*, 651 S.W.2d 754, 758 (Tex.Crim.App.1983). Sufficiency of the evidence is a question of law. If there is any evidence in the record which, if believed by the trier of the facts, establishes guilt of appellant beyond a reasonable doubt, the conviction will be upheld. *Combs v. State*, 643 S.W.2d 709, 716 (Tex.Crim.App.1982). Viewing the evidence in this case in the light most favorable to the verdict of the jury, as we are required to do as an appellate court, we hold the evidence sufficient to support the conviction. Appellant's points of error one, two and three are overruled.

■ In his point of error number six appellant alleges that the court erred in its charge to the jury because it authorized a conviction "on a jury charge which expanded on the allegations of the indictment." We find this point of error without merit. The record reflects no objection at trial by appellant to the charge as submitted by the court. No error has been preserved for appellate review. *See Brooks v. State*, 642 S.W.2d 791, 798 (Tex.Crim.App.1982).

■ Appellant complains in point of error number seven that the admissibility criteria set out in article 38.071, section 2 were not met. Appellant argues that the video tapes were inadmissible because "the court failed, upon request, to find the child competent to testify." The record is devoid of any trial objection to the admissibility of the video tapes based on the trial court's failure to first make a preliminary inquiry as to M___ A___'s competency. Appellant has preserved nothing for review.

■ In any event, the competency of a witness to testify is generally a question for determination by the trial court. *See* TEX.CODE CRIM.PROC.ANN. art. 38.-

06(2) (Vernon 1979).[3] The ruling of the court will not be disturbed on appeal unless an abuse of discretion is shown. *Fields v. State*, 500 S.W.2d 500, 502 (Tex.Crim.App. 1973). From the record we find no abuse of discretion in the case before us. The trial court previewed each video tape in its entirety in the presence of appellant's attorney and the attorney for the State. It is apparent that the trial judge satisfied himself that M___ A___ appeared to possess sufficient intellect to relate the transactions with respect to which she was interrogated as provided by art. 38.06(2). *See Alexander v. State*, 692 S.W.2d 563, 566 (Tex.App. —Eastland 1985m pet. granted); *Jolly v. State*, 681 S.W.2d 689, 695 (Tex.App.— Houston [14th Dist.] 1984, pet. granted).

Appellant contends in his point of error number ten that "the court committed reversible error in failing to make the child available to testify or be cross examined at the time of the playing of the video tape." We find this point of error to be without merit.

The record reflects that when the request to exhibit State's Exhibit No. 2 to the jury was made of the trial court by the State, appellant's trial attorney stated to the court that he had "the same objections," referring to objections made at the admissibility stage. The record further reflects that there was no objection to the exhibition of State's Exhibit No. 4 to the jury, by appellant. We refuse to conclude that appellant's reference to the objections made to the admissibility of State's Exhibit No. 2 was sufficient to place the court on notice that he wanted M___ A___ to testify or be cross-examined at the time of the exhibition of the video tapes to the jury. Article 38.071, § 2(b) provides that:

> If the electronic recording of the oral statement of a child is admitted into evidence under this section, either party may call the child to testify and the opposing party may cross-examine the child.

It is clear from the record that M___ A___ was available to testify, but appellant called M___ A___ to testify after the State had rested its case in chief. Having failed to request that M___ A___ testify or be cross-examined at the same time the video tape was exhibited to the jury, appellant has waived the error he now asserts on appeal. Generally, to preserve error for review a defendant must object in a timely and specific manner at trial. *Granviel v. State*, 552 S.W.2d 107, 121 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Hinkle v. State*, 442 S.W.2d 728, 732 (Tex.Crim.App.1969). *Euziere v. State*, 648 S.W.2d 700, 703 (Tex. Crim.App.1983). Point of error number ten is overruled.

In his point of error number eight appellant alleges that the court committed reversible error "in allowing the State to attack and impeach the testimony of its own expert." In support of his contention, appellant argues that surprise was not the reason the State called Dr. Toy to testify but rather because Dr. Park had not testified to what the State expected.

The record reflects that a discussion was held at the bench during the direct examination of the witness Jimenez. The discussion concerned the State's request to call Dr. Toy as an expert witness even though his name had not previously been supplied to appellant. The court granted the State's request over appellant's objection. After the witness Jimenez was examined the State called Dr. Toy as a witness. No objection was raised by appellant at that time. Dr. Toy testified as hereinbefore set out without objection. We are of the opinion that appellant's failure to timely object to the testimony of Dr. Toy was a waiver of any error concerning impeachment by the State of its own witness. *Granviel*, 552 S.W.2d at 121; *Hinkle*, 442 S.W.2d at 732. The point of error is overruled.

3. TEX.R.EVID. 601(a)(2). Whether or not the child possesses sufficient intellect to relate whatever the child is testifying to now becomes the sole basis for determining the child witness' competency to testify. (As amended by order of June 25, 1984, eff. Nov. 1, 1984.)

■ In his point of error number nine appellant alleges that the court "committed reversible error in failing to require the State to furnish information about the criminal history of each of the State's witnesses." This point of error is without merit.

During a pretrial hearing on appellant's motion for discovery requesting that appellant be provided with a criminal history of each of the State's witnesses, the State offered to provide the criminal history of each of its witnesses as they testified and prior to the witness leaving the witness stand if each witness' date of birth was provided on direct examination. During the direct examination of each of the State's witnesses at trial no mention or request was made of the criminal history of any witness nor was there any objection to the failure of the State to provide any criminal history of any of its witnesses. We further hold that no prejudice has been shown to appellant by reason, if any, of the State's alleged failure to provide the criminal history of any of its witnesses. Point of error number nine is overruled.

We will now discuss the constitutional issues raised by appellant in his points of error numbered four and five. Appellant argues that he was denied the opportunity to cross-examine M___ A___ at the time each of the video tapes was made. As a result he contends in his point of error number four that he was denied the right to confront a witness as provided for by U.S. CONST. Amend. VI; TEX. CONST. art. I, § 10 (Vernon 1984); TEX.CODE CRIM. PROC.ANN. arts. 1.05 and 1.25 (Vernon 1977), and due process guaranteed by U.S. CONST. Amend. XIV. In his point of error number five appellant contends that the use of the video tapes by the State required him to forego his right to remain passive. We overrule both points of error.

■ At the outset we note that appellant made no objection at trial on the reason now urged in his point of error number five. An objection raised on appeal will not be considered if it varies from the objection at trial. *Euziere*, 648 S.W.2d at 704. Our review of the record leads us to the conclusion that appellant's only objections at trial to the admission of State Exhibit Nos. 2 and 4 were "hearsay and denies the right of confrontation." If an objection made in the trial court differs from the complaint made on appeal, a defendant has not preserved any error for review. *Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Cr.App. 1982); *Williams v. State*, 549 S.W.2d 183, 187 (Tex.Cr.App.1977). We will therefore discuss only the issue of confrontation.

The statute under which the video tapes were rendered admissible in the case before us is article 38.071, section 2.

■ The Supreme Court of the United States has made it clear that under the confrontation clause of U.S. CONST. Amend. VI it is possible for belated cross-examination to serve as a constitutionally adequate substitute for cross-examination contemporaneous with an original statement. *California v. Green*, 399 U.S. 149, 159, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497–98 (1970). As long as the declarant is testifying as a witness and subject to full and effective cross-examination at trial, the confrontation clause is not violated by the admission into evidence of the declarant's out-of-court statement. *Green*, 399 U.S. at 160, 90 S.Ct. at 1936, 26 L.Ed.2d at 498.

■ In *Tolbert v. State*, 697 S.W.2d 795, 799 (Tex.App.—Houston [1st Dist.] 1985, pet. granted) the court, following the reasoning in *Green*, held that article 38.-071, section 2, was not *prima facie* violative of the Sixth Amendment confrontation clause even though the statute fails to provide that a defendant be afforded the opportunity to conduct cross-examination simultaneously with the taking of a complaining child witness' video tape statement.

In *Jolly v. State*, 681 S.W.2d 689, 695 (Tex.App.—Houston [14th Dist.] 1984, pet.

granted) the court held appellant's complaint therein to the admissibility of the video tape interview between the specialist and the complaining child witness as a denial of his right to confront and cross-examine the child to be without merit. The court in *Jolly* based its holding on the fact that "appellant therein had the opportunity to call her to the witness stand but chose not to do so. Section 2(b) provides that the opposing party may cross-examine the child. The choice not to cross-examine her was his; therefore he cannot complain on appeal of having failed to do so." *Jolly*, 681 S.W.2d at 695. In *Alexander*, 692 S.W.2d at 566–67, the court, in affirming the conviction of appellant therein, considered the constitutionality of article 38.-071, section 2. Basing its decision on *Jolly*, the court found that each of the requirements of section 2 were satisfied and that the statute did not violate constitutional rights to due process. It further found that appellant therein was afforded the opportunity to confront his accuser and to question her as to the charges which she made against him.

We are aware of, but do not subscribe to, the holding of the court in *Long v. State*, 694 S.W.2d 185, 192–93 (Tex.App.—Dallas 1985, pet. granted) wherein the court declared article 38.071, section 2, unconstitutional because the statute denies a defendant the right of confrontation. The *Long* court reasoned that the statutory post-hoc opportunity to cross examine a complaining child is not an adequate substitute for a cross-examination contemporaneous with the original statement.

The record before us reveals that the requirements for admission of the video recordings pursuant to article 38.071, § 2 were satisfied in each instance. Appellant had the opportunity to and in fact did call M___ A___ as a witness. We find no *prima facie* violation of the Sixth Amendment confrontation clause. *Tolbert*, 697 S.W.2d at 799. Appellant's point of error four is overruled.

Based on our disposition of appellant's ten points of error, the judgment of conviction is affirmed.

TIJERINA, J., not participating.