# NO. 12-07-00129-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH DANIEL SAMET,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A jury found Appellant Joseph Daniel Samet guilty of the offense of aggravated sexual assault of a child and assessed his punishment at imprisonment for life and a $10,000.00 fine. In four issues, Appellant complains the trial court erred in finding the child victim competent to testify, in admitting photos of Appellant and testimony regarding them, in admitting notes written by Appellant, and in admitting testimony regarding a prior extraneous act of fondling. In a fifth issue, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

S.V. and her common law spouse, G.R., lived in Tyler with Appellant and his wife. On February 4, 1998, S.V. and G.R. had a male child, M.P.R., the victim in this case. In 2000, S.V., G.R., and M.P.R. moved to Beaumont. S.V. had a second child, A.R., while they were in Beaumont. Not long after A.R.'s birth, S.V., G.R., and the two children moved back to Tyler and lived in a trailer house a few yards from the Samets. M.P.R. knew Appellant as Papa Joe. When M.P. R. was

between three and one half and four years old, Appellant took M.P.R. to the zoo. When they returned from the zoo to Appellant's home, Appellant placed M.P.R. on his stomach on a bed and "stuck his ding-a-ling in his butt." M.P.R. testified that it hurt and made him mad.

In 2003, the G.R./S.V. family moved to Beaumont. M.P.R. developed a gastrointestinal problem that caused constipation and resulted in M.P.R.'s soiling his clothes. When M.P.R. was almost seven years old, Carolyn Daigneau, a pediatric nurse practitioner, saw and examined M.P.R. at Texas Children's Hospital. Daigneau, concerned that sexual abuse may have caused or contributed to M.P.R.'s gastrointestinal problem, initiated a chain of interviews and referrals that eventually led M.P.R.'s mother to contact the Jefferson County Sheriff's Department. Officer Bruce Koch arranged for M.P.R. to be interviewed by Kim Hanks, an interview specialist with Garth House, a child advocacy center in Beaumont. During the interview, M.P.R. related how Appellant had sexually assaulted him after their visit to the zoo. All of the evidence gathered in Beaumont was sent to Smith County where Appellant was arrested and charged with aggravated sexual assault of a child.

### CHILD VICTIM'S COMPETENCY TO TESTIFY

In his first issue, Samet argues that the trial court erred by finding the child victim competent to testify.

### Standard of Review

The trial court's determination that a child witness is competent to testify is reviewable by an abuse of discretion standard. *Hollinger v. State*, 911 S.W.2d 35, 38 (Tex. App.–Tyler 1995, pet. ref'd). The appellate court must review the entire testimony of the child witness in order to determine if the trial court abused its discretion. *Id.*

### Applicable Law

Rule 601 of the Texas Rules of Evidence provides in pertinent part, as follows:

> (a) **General Rule**. Every person is competent to be a witness except as otherwise provided in these rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:
>
> . . . .

(2) *Children.* Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated.

TEX. R. EVID. 601. There is no particular age below which a child is automatically deemed incompetent to testify. *Fields v. State*, 500 S.W.2d 500, 502 (Tex. Crim. App. 1973). In *Fields*, the child witness was four. *Id.* In *Amescua v. State*, 723 S.W.2d 266, 268, 270-71 (Tex. App.–San Antonio 1986, no writ), the child was three. Inconsistencies in a child's testimony, while perhaps probative on the issue of competency, do not alone render the child an incompetent witness. *Fields*, 500 S.W.2d at 503.

Three factors should be considered by the court in making a determination of competency to testify: "(1) the competence of the witness to observe intelligently the events in question at the time of the occurrence; (2) the capacity of the witness to recollect the events; and, (3) the capacity of the witness to narrate the facts." *Hollinger*, 911 S.W.2d at 38-39. "The third element requires the witness to be able to understand the questions that are asked, to be able to frame intelligent answers to those questions, and to be able to understand the moral responsibility to tell the truth. *Id.*

## Discussion

The trial court conducted a hearing to determine if M.P.R. was competent to testify. When the trial judge administered the oath, M.P.R. had to be prompted by the judge to say "yes." When twice asked if he knew the difference between telling the truth and telling a lie, he responded, "No." But he knew that telling a lie was bad and telling the truth was good. He knew that if the judge told him her robe was white, she would be lying and if she said it was black she would be telling the truth.

Appellant acknowledges M.P.R.'s responses to questions about school were appropriate. He was in the third grade, and he could remember his teachers from kindergarten to the present. His favorite subject was math. He could name the other subjects he was taking.

Appellant points to M.P.R.'s inability to remember what presents he had received the last Christmas and on his last birthday. He could not remember who came to his birthday party one month before the trial. In his testimony, he knew the name of the street (Pierce) but not the town (Beaumont) where he lived. In the video interview, M.P.R. told Kim Hanks that the assault took place on Pierce Street, the street where he lived in Beaumont.

3

Appellant seizes on the child's testimony that the bad thing Papa Joe did to him happened when he was two. M.P.R.'s inability to remember any other event in his life when he was two, Appellant argues, demonstrates his lack of competency to testify.

Although M.P.R. told the trial judge that he was two when Papa Joe did the bad thing to him, our review of the record, including M.P.R.'s own interview with Kim Hanks two years before trial, leads us to conclude that the sexual assault occurred when M.P.R. was approximately four years of age.

The trial court held a competency hearing to determine M.P.R.'s competency to testify. He indicated that he knew the difference between telling the truth and telling a lie, and he promised the court that he would tell the truth and only the truth in this matter. He remembered his teachers' names from kindergarten to the third grade. M.P.R. was understandably more nervous in the courtroom setting than he had been two years earlier when interviewed by Kim Hanks. Nevertheless, despite the intimidating setting, he was able to understand and give relevant answers to the questions asked him by the attorneys for the State and the defense. His testimony during trial about what Papa Joe had done to him, including the more bizarre details, was consistent with what he had told Kim Hanks two years before, except that in the interview with Hanks, he said the assault occurred when he was four. It is clear from M.P.R.'s answers to the judge's questions that he knew he was morally obliged to tell the truth. We conclude the trial court did not abuse its discretion in allowing M.P.R. to testify. Appellant's first issue is overruled.

## ADMISSIBILITY OF PHOTOGRAPHS AND NOTES

In his second issue, Appellant contends the trial court erred in admitting photographs of him wearing a dress with pink hearts on it, each pink heart containing a white dot. Appellant argues that the photos had no relevance or purpose except to show character conformity and to prejudice the jury by branding him a cross dresser. In his third issue, Appellant maintains the trial court erred in admitting sexually explicit notes inviting his teenage son to have sexual relations with him.

The State argues that the victim testified that during the assault Papa Joe was wearing a dress that was "pink and white" or "pink . . . with white polka dots." The State contends the photos and notes are admissible to show identity or modus operandi.

4

**Standard of Review**

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Therefore, evidence is inadmissible that has no relevance beyond a tendency to show the defendant is a bad person or of a character from whom criminal conduct might be expected. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). Evidence of extraneous crimes, wrongs or acts is not inadmissible under Rule 404(b) if it "tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Rule 404(b) also provides that extraneous offense evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404(b). The list is illustrative rather than exhaustive. *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). Extraneous offense evidence may also be admissible to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Evidence of remarkably similar acts may be admissible to prove the corpus delicti or the crime itself. *Doggett v. State*, 187 S.W.3d 444, 453 n.18 (Tex. Crim. App. 2005). The terms identity, system, sign, and modus operandi are often used synonymously in discussing the identity exception. *Page v. State*, 213 S.W.3d 332, 336 n.7 (Tex. Crim. App. 2006). When the extraneous offense is introduced to prove identity by comparing characteristics of the extraneous offense with the charged offense, their characteristics must be so similar that the offenses demonstrate the defendant's "distinctive and idiosyncratic manner of committing criminal acts." *Id.* at 336.

The question of identity is raised whenever a defendant's cross examination implies the identification of the appellant is not trustworthy. *Id.* at 335.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Once an objection under Rule 403 is urged, the trial court must balance the probative value of the evidence against the factors listed in the rule in order to determine if its probative value is substantially outweighed by those factors. *Feldman v. State*, 71 S.W.3d 738, 754 (Tex. Crim. App.

5

2002).

**Discussion**

The photo of Appellant in a dress with hearts on it was taken, according to Appellant's wife, in 2002, within no more than a year from the time of the charged offense. In one of Appellant's notes to his son, he tells his son that he has taken a sleeping pill and will be wearing a dress. He asks his son to come in, lift his dress, have anal intercourse with him, and then pull the dress back down. In the other note, he simply asks his son to have sexual relations with him.

During cross examination, the defense attacked the child victim's ability to independently recall the events to which he testified. The defense attempted to demonstrate that M.P.R. did not know the city where the assault took place or how old he was at the time nor did he know whether Papa Joe was married or how or why he knew him. Appellant's trial strategy raised not only the issue of Appellant's identity as the perpetrator of the sexual assault, but also called into question whether the sexual assault had actually occurred.

Appellant argues that the photographs of Appellant in a dress tend to show only that Appellant was a cross dresser, a characteristic, Appellant claims, "he shares with millions of others." The photographs, Appellant complains, serve only to portray him as a pervert to the more conventional thinkers on the jury. They have little or no relevance, he insists, and therefore their prejudicial effect outweighs "their negligible probative value." Appellant contends the extraneous conduct invited in the notes does not satisfy the test for admissibility to prove identity or modus operandi. Appellant contends his extraneous invitations to intercourse with his son contained in the notes are not sufficiently similar to the charged offense in that the ages of the victims are different and there is no evidence that the sexual abuse contemplated in the notes ever occurred. We disagree. The habit of wearing a dress while engaged in or anticipating engaging in the sexual abuse of children is conduct so idiosyncratic and bizarre that evidence of it acts as Appellant's signature, a distinctive sign or mark that serves to identify Appellant.

We find the evidence especially relevant to the issue of corpus delicti. Appellant attacked M.P.R.'s competence to testify from the commencement of trial. In cross examination, he attempted to demonstrate that M.P.R.'s testimony was untrustworthy because he had no independent memory of the event. The gist of Appellant's jury argument was that M.P.R. was not telling his own story,

6

but one manufactured by his mother and Appellant's wife.

The salient, most memorable detail in M.P.R.'s testimony was his recollection that Papa Joe wore a dress when he did the bad thing to him. Common sense suggests that a child would think it strange and likely remember that the man he knew as Papa Joe was wearing a dress when such an incident happened. It is difficult to imagine more convincing proof supporting M.P.R.'s testimony that the assault occurred and Appellant was the perpetrator than a picture of Appellant taken within a year of the offense wearing a dress with some characteristics similar to the dress described by M.P.R. But M.P.R.'s testimony about the crime and Appellant's role as the perpetrator finds perhaps stronger support in the note showing that Appellant anticipated sexually abusing his son while wearing a dress some two years before his sexual abuse of M.P.R.

The challenged photographs and notes were relevant on the issues of identity and corpus delicti. The trial court correctly decided their relevancy. In conducting the balancing test under Rule 403, the court did not abuse its discretion in finding the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Appellant's second and third issues are overruled.

## LEGAL AND FACTUAL SUFFICIENCY

In his fourth issue, Appellant contends the evidence adduced at trial is legally and factually insufficient to support the jury's verdict.

### Standard of Review

The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); *see also Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

**Applicable Law**

The elements of the charged offense are as follows: (1) a person (2) intentionally or knowingly (3) causes the penetration of the anus or sexual organ (4) of a child under fourteen years of age (5) by any means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2007). The penal code defines a "child" as "a person younger than seventeen years of age who is not the spouse of the actor." TEX. PENAL CODE ANN. § 22.011(c)(1) (Vernon 2005).

The testimony of a child sexual abuse victim is alone sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. § 38.07 (Vernon 2005); *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Courts should give wide latitude to testimony from child victims of sexual abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). There is no requirement that the victim's testimony be corroborated by medical or physical evidence. *See Garcia*, 563 S.W.2d at 928.

**Discussion**

M.P.R. testified that Appellant, after taking him to the zoo, laid him on his stomach and touched him with his "ding-a-ling" on the butt before putting it in his butt. He said it hurt and made him feel mad. Appellant, he testified, was wearing a dress when it happened. Although apparently more nervous when confronted with the courtroom setting, M.P.R.'s testimony followed what he had told Kim Hanks two years before, except that he told Kim Hanks he was four when the assault occurred. In his trial testimony, he said he was two when it happened. Appellant argues the implausibility of a nine year old having any independent recollection of what happened to him when he was two. Our review of the record, however, leads us to believe that M.P.R. was four or nearly four when the sexual assault occurred. It is not unreasonable to believe that a seven year old or a nine year old might easily remember a startling event occurring to him when he was almost four.

S.V. testified that M.P.R. called Appellant Papa Joe. She also testified that they regularly visited in Papa Joe's house "once or twice a day" to watch movies, but that Papa Joe took the boys to the zoo only once. She testified about M.P.R.'s gastrointestinal problem that led Carolyn Daigneau, the pediatric nurse, to suspect child abuse.

Kim Hanks explained to the jury that she had extensive training and experience in child development and in interviewing children suspected of being victims of sexual abuse. In the video

8

made of her interview of M.P.R., M.P.R. tells Kim Hanks that Papa Joe touched his "ring-a-ding" one time while wearing "a girl's dress" that was "pink with polka dots" and then put his "ring-a-ding" into M.P.R.'s butt causing him pain. He told her that "yellow pee came out of Appellant's "ring-a-ding" and went into his butt. Kim Hanks told the jury that the acts described to her by M.P.R. were consistent with "contact or penetration of the anus."

Carolyn Daigneau, a pediatric nurse practitioner, testified that she examined M.P.R. and discovered he had a "dilated rectal vault" caused by holding his stool for long periods out of fear of going to the bathroom. She testified that M.P.R.'s tendency to withhold his stool "could be" consistent with the painful penetration of the anus.

The photographs of Appellant dressed in woman's clothes were introduced in evidence through the testimony of Appellant's wife, Joyce Samet. David Samet, Appellant's son, told the jury that Appellant had personally handed him the sexually explicit notes in 2000 when he was sixteen. The notes had been kept in David Samet's juvenile file since that time. Testimony from a handwriting expert confirmed that the notes were written by Appellant.

Appellant did not testify, nor did he call any witnesses.

Measuring the evidence against the appropriate standard of review, we conclude the evidence is both legally and factually sufficient to support Appellant's conviction. Appellant's fourth issue is overruled.

### APPELLANT'S EXTRANEOUS ACT OF FONDLING M.P.R.

In his fifth issue, Appellant contends the trial court erred in allowing Joyce Samet to testify that she saw Appellant fondle M.P.R.'s testicles when M.P.R. was one or two years old while Appellant was changing M.P.R.'s diaper.

In reviewing a trial court's decision to admit or exclude evidence, the standard of review is abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

Section 2, article 38.37 of the Texas Code of Criminal Procedure provides, as follows:

Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp. 2007). Although this article of the code of criminal procedure "eliminates the necessity of showing the evidence falls within one of the 404(b) exceptions . . . [and] relaxes the strictures associated with 404(b)," it does not exempt the extraneous offense from a Rule 403 analysis. *McCulloch v. State*, 39 S.W.3d 678, 681, 684 (Tex. App.– Beaumont 2001, pet. ref'd). Texas Rule of Evidence 403 provides that the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). Factors the trial court should consider in conducting a Rule 403 balancing test include (1) the probative value of the evidence, (2) the potential of the evidence to impress the jury in some irrational, yet indelible way, (3) the time the proponent needs to develop the evidence, and (4) the proponent's need for the evidence. *See Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000).

Given the other testimony in this case, there was little need for and only minor probative value in evidence that two or three years before the charged offense, when M.P.R. was probably one year old, Appellant played with M.P.R.'s testicles one time while he was changing M.P.R.'s diaper. The evidence, however, also lacked the potential for significant prejudicial effect. The evidence of Appellant's willingness to participate in diaper changing may, in fact, have been the most positive information about Appellant to emerge during the trial. The trial court did not abuse its discretion in determining the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Appellant's fifth issue is overruled.

## DISPOSITION

The judgment of the trial court is *affirmed*.

10

  BILL BASS  <br>Justice

Opinion delivered July 2, 2008.

*Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(DO NOT PUBLISH)