NO. 12-07-00129-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JOSEPH DANIEL SAMET,
§
 APPEAL FROM THE 114TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 A jury found Appellant Joseph Daniel Samet guilty of the offense of aggravated sexual
assault of a child and assessed his punishment at imprisonment for life and a $10,000.00 fine. In
four issues, Appellant complains the trial court erred in finding the child victim competent to testify,
in admitting photos of Appellant and testimony regarding them, in admitting notes written by
Appellant, and in admitting testimony regarding a prior extraneous act of fondling. In a fifth issue,
Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We
affirm.


Background


 S.V. and her common law spouse, G.R., lived in Tyler with Appellant and his wife. On
February 4, 1998, S.V. and G.R. had a male child, M.P.R., the victim in this case. In 2000, S.V.,
G.R., and M.P.R. moved to Beaumont. S.V. had a second child, A.R., while they were in Beaumont. 
Not long after A.R.'s birth, S.V., G.R., and the two children moved back to Tyler and lived in a
trailer house a few yards from the Samets. M.P.R. knew Appellant as Papa Joe. When M.P. R. was
between three and one half and four years old, Appellant took M.P.R. to the zoo. When they
returned from the zoo to Appellant's home, Appellant placed M.P.R. on his stomach on a bed and
"stuck his ding-a-ling in his butt." M.P.R. testified that it hurt and made him mad.

 In 2003, the G.R./S.V. family moved to Beaumont. M.P.R. developed a gastrointestinal
problem that caused constipation and resulted in M.P. R.'s soiling his clothes. When M.P.R. was
almost seven years old, Carolyn Daigneau, a pediatric nurse practitioner, saw and examined M.P.R.
at Texas Children's Hospital. Daigneau, concerned that sexual abuse may have caused or
contributed to M.P.R.'s gastrointestinal problem, initiated a chain of interviews and referrals that
eventually led M.P.R.'s mother to contact the Jefferson County Sheriff's Department. Officer Bruce
Koch arranged for M.P.R. to be interviewed by Kim Hanks, an interview specialist with Garth
House, a child advocacy center in Beaumont. During the interview, M.P.R. related how Appellant
had sexually assaulted him after their visit to the zoo. All of the evidence gathered in Beaumont was
sent to Smith County where Appellant was arrested and charged with aggravated sexual assault of
a child.


Child Victim's Competency to Testify


 In his first issue, Samet argues that the trial court erred by finding the child victim competent
to testify.

Standard of Review

 The trial court's determination that a child witness is competent to testify is reviewable by
an abuse of discretion standard. Hollinger v. State, 911 S.W.2d 35, 38 (Tex. App.-Tyler 1995, pet.
ref'd). The appellate court must review the entire testimony of the child witness in order to
determine if the trial court abused its discretion. Id.

Applicable Law

 Rule 601 of the Texas Rules of Evidence provides in pertinent part, as follows:


 (a) General Rule. Every person is competent to be a witness except as otherwise provided in these
rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:


 . . . .


 (2) Children. Children or other persons who, after being examined by the court, appear not to possess
sufficient intellect to relate transactions with respect to which they are interrogated.



Tex. R. Evid. 601. There is no particular age below which a child is automatically deemed
incompetent to testify. Fields v. State, 500 S.W.2d 500, 502 (Tex. Crim. App. 1973). In Fields, the
child witness was four. Id. In Amescua v. State, 723 S.W.2d 266, 268, 270-71 (Tex. App.-San
Antonio 1986, no writ), the child was three. Inconsistencies in a child's testimony, while perhaps
probative on the issue of competency, do not alone render the child an incompetent witness. Fields,
500 S.W.2d at 503.

 Three factors should be considered by the court in making a determination of competency
to testify: "(1) the competence of the witness to observe intelligently the events in question at the
time of the occurrence; (2) the capacity of the witness to recollect the events; and, (3) the capacity
of the witness to narrate the facts." Hollinger, 911 S.W.2d at 38-39. "The third element requires
the witness to be able to understand the questions that are asked, to be able to frame intelligent
answers to those questions, and to be able to understand the moral responsibility to tell the truth. Id.

Discussion

 The trial court conducted a hearing to determine if M.P.R. was competent to testify. When
the trial judge administered the oath, M.P.R. had to be prompted by the judge to say "yes." When
twice asked if he knew the difference between telling the truth and telling a lie, he responded, "No." 
But he knew that telling a lie was bad and telling the truth was good. He knew that if the judge told
him her robe was white, she would be lying and if she said it was black she would be telling the
truth.

 Appellant acknowledges M.P.R.'s responses to questions about school were appropriate. He
was in the third grade, and he could remember his teachers from kindergarten to the present. His
favorite subject was math. He could name the other subjects he was taking.

 Appellant points to M.P.R.'s inability to remember what presents he had received the last
Christmas and on his last birthday. He could not remember who came to his birthday party one
month before the trial. In his testimony, he knew the name of the street (Pierce) but not the town
(Beaumont) where he lived. In the video interview, M.P.R. told Kim Hanks that the assault took
place on Pierce Street, the street where he lived in Beaumont.

 Appellant seizes on the child's testimony that the bad thing Papa Joe did to him happened
when he was two. M.P.R.'s inability to remember any other event in his life when he was two,
Appellant argues, demonstrates his lack of competency to testify.

 Although M.P.R. told the trial judge that he was two when Papa Joe did the bad thing to him,
our review of the record, including M.P.R.'s own interview with Kim Hanks two years before trial,
leads us to conclude that the sexual assault occurred when M.P.R. was approximately four years of
age.

 The trial court held a competency hearing to determine M.P.R.'s competency to testify. He
indicated that he knew the difference between telling the truth and telling a lie, and he promised the
court that he would tell the truth and only the truth in this matter. He remembered his teachers'
names from kindergarten to the third grade. M.P.R. was understandably more nervous in the
courtroom setting than he had been two years earlier when interviewed by Kim Hanks. Nevertheless,
despite the intimidating setting, he was able to understand and give relevant answers to the questions
asked him by the attorneys for the State and the defense. His testimony during trial about what Papa
Joe had done to him, including the more bizarre details, was consistent with what he had told Kim
Hanks two years before, except that in the interview with Hanks, he said the assault occurred when
he was four. It is clear from M.P.R.'s answers to the judge's questions that he knew he was morally
obliged to tell the truth. We conclude the trial court did not abuse its discretion in allowing M.P.R.
to testify. Appellant's first issue is overruled.


Admissibility of Photographs and Notes


 In his second issue, Appellant contends the trial court erred in admitting photographs of him
wearing a dress with pink hearts on it, each pink heart containing a white dot. Appellant argues that
the photos had no relevance or purpose except to show character conformity and to prejudice the jury
by branding him a cross dresser. In his third issue, Appellant maintains the trial court erred in
admitting sexually explicit notes inviting his teenage son to have sexual relations with him.

 The State argues that the victim testified that during the assault Papa Joe was wearing a dress
that was "pink and white" or "pink . . . with white polka dots." The State contends the photos and
notes are admissible to show identity or modus operandi.

Standard of Review

 "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person
in order to show action in conformity therewith." Tex. R. Evid. 404(b). Therefore, evidence is
inadmissible that has no relevance beyond a tendency to show the defendant is a bad person or of
a character from whom criminal conduct might be expected. Casey v. State, 215 S.W.3d 870, 879
(Tex. Crim. App. 2007). Evidence of extraneous crimes, wrongs or acts is not inadmissible under
Rule 404(b) if it "tends in logic and common experience to serve some purpose other than character
conformity to make the existence of a fact of consequence more or less probable than it would be
without the evidence." Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Rule
404(b) also provides that extraneous offense evidence may "be admissible for other purposes, such
as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake
or accident." Tex. R. Evid. 404(b). The list is illustrative rather than exhaustive. Johnston v. State,
145 S.W.3d 215, 219 (Tex. Crim. App. 2004). Extraneous offense evidence may also be admissible
to rebut a defensive theory. Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Evidence
of remarkably similar acts may be admissible to prove the corpus delicti or the crime itself. Doggett
v. State, 187 S.W.3d 444, 453 n.18 (Tex. Crim. App. 2005). The terms identity, system, sign, and
modus operandi are often used synonymously in discussing the identity exception. Page v. State,
213 S.W.3d 332, 336 n.7 (Tex. Crim. App. 2006). When the extraneous offense is introduced to
prove identity by comparing characteristics of the extraneous offense with the charged offense, their
characteristics must be so similar that the offenses demonstrate the defendant's "distinctive and
idiosyncratic manner of committing criminal acts." Id. at 336.

 The question of identity is raised whenever a defendant's cross examination implies the
identification of the appellant is not trustworthy. Id. at 335.

 "Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. 
Once an objection under Rule 403 is urged, the trial court must balance the probative value of the
evidence against the factors listed in the rule in order to determine if its probative value is
substantially outweighed by those factors. Feldman v. State, 71 S.W.3d 738, 754 (Tex. Crim. App.
2002).

Discussion

 The photo of Appellant in a dress with hearts on it was taken, according to Appellant's wife,
in 2002, within no more than a year from the time of the charged offense. In one of Appellant's
notes to his son, he tells his son that he has taken a sleeping pill and will be wearing a dress. He asks
his son to come in, lift his dress, have anal intercourse with him, and then pull the dress back down. 
In the other note, he simply asks his son to have sexual relations with him.

 During cross examination, the defense attacked the child victim's ability to independently
recall the events to which he testified. The defense attempted to demonstrate that M.P.R. did not
know the city where the assault took place or how old he was at the time nor did he know whether
Papa Joe was married or how or why he knew him. Appellant's trial strategy raised not only the
issue of Appellant's identity as the perpetrator of the sexual assault, but also called into question
whether the sexual assault had actually occurred.

 Appellant argues that the photographs of Appellant in a dress tend to show only that
Appellant was a cross dresser, a characteristic, Appellant claims, "he shares with millions of others." 
The photographs, Appellant complains, serve only to portray him as a pervert to the more
conventional thinkers on the jury. They have little or no relevance, he insists, and therefore their
prejudicial effect outweighs "their negligible probative value." Appellant contends the extraneous
conduct invited in the notes does not satisfy the test for admissibility to prove identity or modus
operandi. Appellant contends his extraneous invitations to intercourse with his son contained in the
notes are not sufficiently similar to the charged offense in that the ages of the victims are different
and there is no evidence that the sexual abuse contemplated in the notes ever occurred. We disagree. 
The habit of wearing a dress while engaged in or anticipating engaging in the sexual abuse of
children is conduct so idiosyncratic and bizarre that evidence of it acts as Appellant's signature, a
distinctive sign or mark that serves to identify Appellant.

 We find the evidence especially relevant to the issue of corpus delicti. Appellant attacked
M.P.R.'s competence to testify from the commencement of trial. In cross examination, he attempted
to demonstrate that M.P.R.'s testimony was untrustworthy because he had no independent memory
of the event. The gist of Appellant's jury argument was that M.P.R. was not telling his own story,
but one manufactured by his mother and Appellant's wife.

 The salient, most memorable detail in M.P.R.'s testimony was his recollection that Papa Joe
wore a dress when he did the bad thing to him. Common sense suggests that a child would think it
strange and likely remember that the man he knew as Papa Joe was wearing a dress when such an
incident happened. It is difficult to imagine more convincing proof supporting M.P.R.'s testimony
that the assault occurred and Appellant was the perpetrator than a picture of Appellant taken within
a year of the offense wearing a dress with some characteristics similar to the dress described by
M.P.R. But M.P.R.'s testimony about the crime and Appellant's role as the perpetrator finds perhaps
stronger support in the note showing that Appellant anticipated sexually abusing his son while
wearing a dress some two years before his sexual abuse of M.P.R.

 The challenged photographs and notes were relevant on the issues of identity and corpus
delicti. The trial court correctly decided their relevancy. In conducting the balancing test under Rule
403, the court did not abuse its discretion in finding the probative value of the evidence was not
substantially outweighed by the danger of unfair prejudice. Appellant's second and third issues are
overruled.


Legal and Factual Sufficiency


 In his fourth issue, Appellant contends the evidence adduced at trial is legally and factually
insufficient to support the jury's verdict.

Standard of Review

 The standard for reviewing a legal sufficiency challenge is whether, viewing the evidence in
the light most favorable to the jury's verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317-18, 99
S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); see also Sanders v. State, 119 S.W.3d 818, 820 (Tex.
Crim. App. 2003). In reviewing factual sufficiency, we must ask whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate
if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000); see also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

Applicable Law

 The elements of the charged offense are as follows: (1) a person (2) intentionally or
knowingly (3) causes the penetration of the anus or sexual organ (4) of a child under fourteen years
of age (5) by any means. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp. 2007). 
The penal code defines a "child" as "a person younger than seventeen years of age who is not the
spouse of the actor." Tex. Penal Code Ann. § 22.011(c)(1) (Vernon 2005).

 The testimony of a child sexual abuse victim is alone sufficient to support a conviction for
aggravated sexual assault. Tex. Code Crim. Proc. Ann. § 38.07 (Vernon 2005); Garcia v. State,
563 S.W.2d 925, 928 (Tex. Crim. App. 1978). Courts should give wide latitude to testimony from
child victims of sexual abuse. See Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). 
There is no requirement that the victim's testimony be corroborated by medical or physical evidence. 
See Garcia, 563 S.W.2d at 928.

Discussion

 M.P.R. testified that Appellant, after taking him to the zoo, laid him on his stomach and
touched him with his "ding-a-ling" on the butt before putting it in his butt. He said it hurt and made
him feel mad. Appellant, he testified, was wearing a dress when it happened. Although apparently
more nervous when confronted with the courtroom setting, M.P.R.'s testimony followed what he had
told Kim Hanks two years before, except that he told Kim Hanks he was four when the assault
occurred. In his trial testimony, he said he was two when it happened. Appellant argues the
implausibility of a nine year old having any independent recollection of what happened to him when
he was two. Our review of the record, however, leads us to believe that M.P.R. was four or nearly
four when the sexual assault occurred. It is not unreasonable to believe that a seven year old or a
nine year old might easily remember a startling event occurring to him when he was almost four.

 S.V. testified that M.P.R. called Appellant Papa Joe. She also testified that they regularly
visited in Papa Joe's house "once or twice a day" to watch movies, but that Papa Joe took the boys
to the zoo only once. She testified about M.P.R.'s gastrointestinal problem that led Carolyn
Daigneau, the pediatric nurse, to suspect child abuse.

 Kim Hanks explained to the jury that she had extensive training and experience in child
development and in interviewing children suspected of being victims of sexual abuse. In the video
made of her interview of M.P.R., M.P.R. tells Kim Hanks that Papa Joe touched his "ring-a-ding"
one time while wearing "a girl's dress" that was "pink with polka dots" and then put his "ring-a-ding" into M.P.R.'s butt causing him pain. He told her that "yellow pee came out of Appellant's
"ring-a-ding" and went into his butt. Kim Hanks told the jury that the acts described to her by
M.P.R. were consistent with "contact or penetration of the anus."

 Carolyn Daigneau, a pediatric nurse practitioner, testified that she examined M.P.R. and
discovered he had a "dilated rectal vault" caused by holding his stool for long periods out of fear of
going to the bathroom. She testified that M.P.R.'s tendency to withhold his stool "could be"
consistent with the painful penetration of the anus.

 The photographs of Appellant dressed in woman's clothes were introduced in evidence
through the testimony of Appellant's wife, Joyce Samet. David Samet, Appellant's son, told the jury
that Appellant had personally handed him the sexually explicit notes in 2000 when he was sixteen. 
The notes had been kept in David Samet's juvenile file since that time. Testimony from a
handwriting expert confirmed that the notes were written by Appellant.

 Appellant did not testify, nor did he call any witnesses.

 Measuring the evidence against the appropriate standard of review, we conclude the evidence
is both legally and factually sufficient to support Appellant's conviction. Appellant's fourth issue
is overruled.


Appellant's Extraneous Act of Fondling M.P.R.


 In his fifth issue, Appellant contends the trial court erred in allowing Joyce Samet to testify
that she saw Appellant fondle M.P.R.'s testicles when M.P.R. was one or two years old while
Appellant was changing M.P.R.'s diaper.

 In reviewing a trial court's decision to admit or exclude evidence, the standard of review is
abuse of discretion. Martin v. State, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

 Section 2, article 38.37 of the Texas Code of Criminal Procedure provides, as follows:


 Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes,
wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense
shall be admitted for its bearing on relevant matters, including: 


 (1) the state of mind of the defendant and the child; and 


 (2) the previous and subsequent relationship between the defendant and the child.



Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Supp. 2007). Although this article of the code
of criminal procedure "eliminates the necessity of showing the evidence falls within one of the
404(b) exceptions . . . [and] relaxes the strictures associated with 404(b)," it does not exempt the
extraneous offense from a Rule 403 analysis. McCulloch v. State, 39 S.W.3d 678, 681, 684 (Tex.
App.- Beaumont 2001, pet. ref'd). Texas Rule of Evidence 403 provides that the trial court may
exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair
prejudice. "Rule 403 favors the admission of relevant evidence and carries a presumption that
relevant evidence will be more probative than prejudicial." Williams v. State, 958 S.W.2d 186, 196
(Tex. Crim. App. 1997). Factors the trial court should consider in conducting a Rule 403 balancing
test include (1) the probative value of the evidence, (2) the potential of the evidence to impress the
jury in some irrational, yet indelible way, (3) the time the proponent needs to develop the evidence,
and (4) the proponent's need for the evidence. See Wyatt v. State, 23 S.W.3d 18, 26 (Tex. Crim.
App. 2000).

 Given the other testimony in this case, there was little need for and only minor probative
value in evidence that two or three years before the charged offense, when M.P.R. was probably one
year old, Appellant played with M.P.R.'s testicles one time while he was changing M.P.R.'s diaper. 
The evidence, however, also lacked the potential for significant prejudicial effect. The evidence of
Appellant's willingness to participate in diaper changing may, in fact, have been the most positive
information about Appellant to emerge during the trial. The trial court did not abuse its discretion
in determining the probative value of the evidence was not substantially outweighed by the danger
of unfair prejudice. Appellant's fifth issue is overruled.


Disposition


 The judgment of the trial court is affirmed.




 BILL BASS 

 Justice



Opinion delivered July 2, 2008.

Panel consisted of Worthen, C.J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.


































(DO NOT PUBLISH)